Kathleen P. March, counsel for Counselor N. P. Shin. Andrew S. Gissom, counsel for Appellee Murray Altman. Counsel? Good morning, Your Honors. I am Attorney Kathleen March of the And how much time do you wish to reserve for rebuttal? I'd like to reserve two minutes, if you can help me. And I went to Judge Lafferty's program on appeals at the California Bankruptcy Forum, so I figure I shouldn't make too many mistakes this morning. No, nor should I, I hope. The BAP should reverse the bankruptcy court's order for appeal that denied Shin's no-stay and alternatively relieved-from-stay motion, because both parts of the bankruptcy court's denial were reversible errors of law. There was no stay because Shin was seeking to move the Superior Court to order appointment of a receiver pursuant to California state law to take control of the assets of DSF, that's Desert Springs Financial LLC. Can I ask you kind of a gating question? This may seem like a non sequitur to you, but it was confusing to me and it may just be nomenclature. It's going to lead to a bunch of questions I have for your worthy adversary, I think. What's the nature of Ms. Shin's interest in DSF? She is a 25% economic interest owner. Okay, but she's not a member? She... I found that part confusing. She purchased 25% interest and the state court in the 12-23-15 final judgment of the state court determined she's a 25% interest owner. Okay. Economic interest owner, and that gives her standing under the California receiver statute, California CCP 564. My question, it may seem a little quibbling to you, but I just want to make sure I have this right. If she's not a member, does DSF or the other members owe her a fiduciary duty? That is what the Superior Court 12-23-15 judgment found. It found that Altman, the managing member, sole managing member of DSF, had breached his fiduciary duty, but he is the managing member. But it found that because she had an economic interest, that by itself was enough to create a fiduciary duty, even though she's not a member. It found expressly that he had breached his fiduciary duty, ordered him to repay $1.44 million, now running interest at 10% per year from 12-23-15 onward. Okay, thanks. So there is no stay pursuant to the controlling Ninth Circuit law, which the Bankruptcy Court and, of course, this Court, everybody in the Ninth Circuit is required to follow, which is the Chugash line of cases, Chugash, the seminal case. We cited Chugash. We cited U.S. v. Dos Cabezas. We cited Pintler. We cited the more recent Ninth Circuit cases that follow those, Accel Innovations, Boucher v. Shaw. They all hold there is no bankruptcy automatic stay when the action is against a non-debtor. DSF is a non-debtor. It used to be a debtor, but its bankruptcy case was dismissed many months ago. So DSF is a non-debtor. SHIN, a non-debtor, was seeking to move the Superior Court to appoint a receiver pursuant to California state law to take control of the assets of DSF, a non-debtor. There's no jurisdiction of the Bankruptcy Court over DSF, and as is important later on, of course, the Bankruptcy Code 11 U.S.C. 105B expressly, expressly prohibits a bankruptcy judge from ordering appointment of receiver. So the only court that is a debtor is the Superior Court. So you deny or you believe that the management interest is not property estate? Yes, Your Honor. There's no Ninth Circuit case or BAP case that says that Altman, the individual debtor's right to manage a non-debtor LLC, that that right is property of the bankruptcy estate or that it stayed. Can I make a point that I think we're all going to struggle with? Part of the reason why that's true is because if you look at LLC law, it just hasn't risen up to the circuit level for the most part. I mean, I did a program at the FJC a couple of years ago trying to acquaint my colleagues with what LLCs are all about. Every case is a bankruptcy case, bankruptcy court case. These things just don't make it up to the circuits. So you're right that there probably isn't any Ninth Circuit law saying that, but that's because they simply haven't considered the question. Well, there is something analogous which I think is important, which is even for a debtor, think of the GM bankruptcy case, there's no stay, staying normal corporate governance, and the right to move for a receiver for DSF is, in effect, a corporate governance right. So even if DSF was a debtor, there is a strong argument that there would be no stay relating to corporate governance of DSF, but it's not even a debtor. So we're two steps removed from there being a stay, Your Honors. Well, I'll give you a couple of other thoughts about this, and these are a little off the reservation in the sense that nobody briefed the question of where we would find within a bankruptcy what's the value of an LLC controlling interest in a bankruptcy. But there are plenty of cases that talk about whether that management interest comes in and whether that can be frustrated because of the contract, ipso facto type clauses. So I think it is at least a live issue. And what the bankruptcy courts seem to be positing is there's an economic value to that management control, although it didn't put a number on it. It said, look, it seems to be worth more with the management control than the pure economic interest. So was that error? I think it's risky for a bankruptcy court to decide there's a stay when no Ninth Circuit case or no back case. Well, first we have to decide if it's property of the estate. Correct. Right. So you're jumping to the second question. First, it is property of the estate, and what Judge Lafferty is getting to is there's some economic value because it's worth more if you can manage it. Therefore, that portends that it's property of the estate. Well, maybe, maybe not. The BAP reversed in a previous appeal, reversed the bankruptcy court's denial of Shin's motion objecting to the claim of Mitchell Altman, son of Murray Altman. Yeah, I was on that panel. I remember that really well. Soon after the DSF bankruptcy case was dismissed, Altman, the debtor, as managing member of DSF, caused DSF to pay $600,000 to Mitchell Altman. That's on the same appeal where the BAP reversed, vacated. Now, if a receiver were appointed by the superior court, a receiver might get that money back. That might increase the interest. Or a Chapter 11 trustee or a Chapter 7 trustee if you convert the case. Well, a Chapter 7 trustee or 11 trustee would, I think it's problematic whether a Chapter 7 or 11 trustee would actually have jurisdiction over DSF, a non-debtor. If you owned all of the membership and you had exclusive management rights, and those management rights are valuable, wouldn't they, by definition, have control and ability to run, take whatever actions, recover any causes of actions of DSF, which then flow through, as you are arguing, to the ultimate benefit of the owner? Well, the right to manage DSF is a right that is terminable pursuant to California State law. But that doesn't affect the status of property of the estate. Well, let's assume for a minute that the right to manage was property of the estate. If they write this terminable under California State law, if Murray Altman had done a bad enough job of managing that it was appropriate under California State law for the superior court, the only court that had jurisdiction to act, to order a receiver appointed to take control of the assets of DSF, the bankruptcy court did not grasp anywhere in its multiple-page decision that the right to manage DSF is a right terminable under State law. Well, it's terminable as to the debtor under bankruptcy law if you put a Chapter 11 trustee or if you convert. There's different ways to skin that cat. Yes, well, we moved to convert several times in this case, and it wasn't ordered. And the fact is a bankruptcy trustee has no duty to protect equity holders or creditors of DSF, which is a non-debtor. A bankruptcy trustee would have duty to protect. I was waiting to hear that because I didn't see it in the papers at all, but I think that's a very interesting point. So every Chapter 7 trustee that has the individual's ownership and then extends that reach through that ownership to administer a closely held corporation or entity has no business doing that under your scenario? Well, I don't think we get that because no trustee was appointed. Well, trustee or Chapter 11 debtor in possession, it's akin to the same thing. What we get to is the fact that the Superior Court is the only court that has jurisdiction and power to decide whether a receiver should be appointed to take control of the assets of DSF. The Bankruptcy Court simply had no power to appoint a receiver and no power over DSF. So the effect... I'm sorry, you finish your sentence. I'm sorry. You first. Oh, thank you. I mean, it seems to me there's sort of two levels here. One level is it may be that Altman's a bad guy, and somebody should get Altman out of the role of managing this. There's two ways to do that. One way is you get relief from stay, you go off, and you get yourself a receiver. The second way is a trustee is appointed in the Chapter 11 case who will at least theoretically not do bad things. The second level of analysis is, is that doable in a conflict sense? Is there, you know, can you see that the interests of the creditors in Altman and the interest holders in DSF are similar enough that it wouldn't be a conflict for a trustee even the most well-intentioned trustee to try to play both roles? And what I'm hearing now is that second argument, right? It just can't be done in your view. They aren't the same, and there's a fiduciary duty of a trustee to the bankruptcy debtor. That would be Murray Altman. There's not a fiduciary duty to the equity holders and creditors of DSF, the non-debtor, which are different. But the fact is we moved twice for a conversion or a trustee or dismissal, didn't get it, and so we're playing the ball where it lies, which is we made this motion and it should have been granted under controlling Ninth Circuit law. No stay. And if you assume argumentative there was a stay, there was massive cause to lift the stay. This is abuse of discretion, by the way, the standard? No, I don't think so, Your Honor. Okay. Was there a stay? That's an issue of law. That's de novo review. Okay, but how about granting a stay or granting a leave? Usually, Your Honor, whether to grant the stay is reviewed for abuse of discretion, but here the facts were not in dispute at all, so I think it is that the bankruptcy court, in fact, applied the wrong standard. And that's an error of law, and error of law is abuse of discretion as a matter of law. The bankruptcy court applied the Curtis-Tucson Estates-Cronemeyer-Sonnax line of cases about when is there cause to lift the stay. That was not the right test because those cases are all about whether there was cause to lift the bankruptcy stay to allow suit against a bankruptcy debtor in a non-bankruptcy forum. Everybody agreed that the motion in state court seeking a receiver to be appointed to take control of the assets of non-debtor DSF, the respondent on that would be DSF, not Altman. So it would not be a suit against a bankruptcy debtor. So the Curtis-Cronemeyer-Sonnax-Tucson Estates line of cases didn't apply at all, but so it was error of law to use that, to rely on that. But we briefed in detail every single one of those factors at ER 334-348, 334-348, and the spousers were massively in favor of lifting the stay, even if you used the Curtis-Cronemeyer-Sonnax-Tucson Estates line of cases. Now, another problem here was the bankruptcy court confused what was assets of the non-debtor DSF, real property and other things, bank accounts, cause of action DSF owned, with what was property of the Altman estate. The property of the Altman estate was Altman's 75% of the equity stock in DSF. Altman didn't, property of his estate was not the assets of DSF, which were owned by DSF, a non-debtor separate entity. And the bankruptcy court confused that in its decision. But Altman would still own his 75% equity in DSF if a receiver was appointed. And, in fact, if a receiver got back the $600,000 that was paid out to Mitchell Altman, the value of Altman's equity might go up. Counsel, you have two minutes left if you want to. Two minutes. Did you want to reserve it? Final point. This should be over. Under 11 U.S.C. 362E2, it wasn't decided in the 60 days. It shouldn't have been objected in writing to going beyond the 60 days. Okay. So the stay expired as a matter of law. Thank you. Thank you. Thank you. Mr. Bison, please introduce yourself and tell us who you represent. Yes. Good morning, Your Honors. Andrew Bissum for Murray Altman. One thing to clear up some of the confusion that Judge Lafferty had mentioned about the ownership interest. Mr. Altman is a 100% equity owner of DSF. He is a 75% economic interest holder in DSF. Ms. Shin has a 25% economic interest in DSF, but does not a member and does not have an ownership interest in DSF. So let me ask you the same question I asked Ms. March. Does he have a fiduciary duty to her? Well, the Superior Court already found that he had a fiduciary duty. Okay. So that's issue preclusion. He has a fiduciary duty. Correct. Okay. Yes. Also, I'd want to start with perhaps with the last thing that Ms. March had mentioned about that the automatic stay should have been granted because it went over the 60 days. And in her argument, she'd argued that she never had agreed to, she never consented to extending it beyond the 60 days, and also that there were not sufficient cause in writing to do so. However, that's not a correct statement. In Ms. Shin's own appellate brief on page 26, she admits that at the first hearing, the first hearing occurred on July 25th of 2017, and it was continued with Ms. Shin and Ms. March's consent to September 12th, 2017. That was already beyond the 60 days. So she had consented. I think what she's arguing is that every time it was continued thereafter, that we needed to get new consent. I don't believe that's the law. I mean, we're already beyond the 60 days. Part of that was, part of the delay was caused by Ms. March's own doings in filing a premature appeal to the BAP, which caused additional delay. But the fact that she'd already had consented to the initial continues beyond the 60 days. I think that takes care of that matter. As far as whether this is property of the bankruptcy estate, you know, management rights are property of the estate. There's a case law that says, now, Altman's rights under the DSF operating agreement was, in addition to a share of the net profits, net losses, and distributions, he also had a right to exercise full, complete, and exclusive authority, power, and discretion to manage and control DSF's business. Now, Shin agrees that Altman's rights to profits, et cetera, are property of the estate. There's no dispute as to that. But he argues that somehow his rights under the same agreement, same operating agreement, to full, complete, and exclusive right to manage DSF business operations is not property of the estate. Well, let me tell you where I begin to have a problem with this. I think that what the bankruptcy court said was it just sort of makes sense that those management rights make the interest more valuable. That's correct. Now, that would be demonstrable if the plan were, let me sell my membership interest with all the management rights along with it. That didn't happen, and nobody assessed that, right? Correct. So what the bankruptcy court said was it just must be that the ability to dictate when things happen makes this more valuable. Right. But that's not monetizing it, right? No value. The court didn't place a value on those rights. Right. Okay. But what that creates is this question of who's driving this bus and why, and I think that's really what this is all about, and that's where I'm trying to make sure I understand what the court did and why it did it because, I mean, the stay is just a tool, right? It's not supposed to substantially change anybody's rights. Correct. What Ms. Shinn is arguing is that's exactly what's happening here, that I have a right to go get a receiver in state court, and, you know, all these rights begin from state law, right? So number one, state law. Number two, bankruptcy changes it to the extent you need to to affect the estate. And number three, the code restricts some of those restrictions, right? So we begin with the premise that your rights are your state law rights, and what I'm hearing is that there is a state law right to go back to a state court and have DSF be managed differently. Does that affect an interest of the estate? Sure it does. But who should do that? That's the first question. The second question is would it be the same test? I mean, would you have to show to get a receiver everything you'd have to show to get this hypothetical trustee that the bankruptcy court was talking about? I'm not sure that's the case. The third question is for the same reason that Judge Wallace was concerned about making the debtor in possession or a trustee beholden to DSF. It works the other way around, too, doesn't it? I mean, how could a trustee, could a trustee in this Chapter 11 case be a fiduciary to DSF? Wouldn't be a fiduciary of, well, the trustee would sit in the shoes of the debtor. Right, so he would have management rights, right? He'd have management rights. And to whom would he have a fiduciary duty under those circumstances? Well, if he's standing in the shoes of Altman, and Altman has fiduciary duties, then he as well would have fiduciary duties. I mean, it worries me as much that what Judge Wallace thought was a problem for granting relief from state, which is that control is going to be gone, it works the other way, too. That's what concerns me here. But the flip side, too, is that the receiver, if a receiver is appointed, would not have any duty. But that's the point. How could any one person do both is my question. Because what you're assuming is a trustee could do both, and I don't see how that person could. Well, if Altman has a fiduciary duty to the members of DSF, which the Superior Court has already found that it has, that he has, and the trustee stands in the shoes of Mr. Altman, then he would also take on those responsibilities and the duties. Right, so if those interests are perfectly aligned, you don't have a problem. If they're not, you might have a problem, right? And my worry is I don't think the Bankruptcy Court really addressed that, and that worries me a bit. But that alignment, I mean, that would be true of anybody, not just a trustee, but anybody who is managing the business. Yeah, that's what makes this hard, and it didn't get thought through. I mean, that's my worry. But I believe that a trustee would have some duties towards the owners of DSF. And in this case, remember, we're only talking about, we have Mr. Altman, who's a 100% owner, and then we have Ms. Shin, who has a 25% economic interest. There's nobody else involved. I understand. So it's just their rights. But I don't think there's any question that a receiver— Well, are there creditors at DSF? Do you know? There are, yes. Okay. DSF does have creditors. So they'd care, too, presumably. Right. Okay. Right. But a receiver would not have any, would not owe any duty whatsoever to the bankruptcy estate's creditors. Well, he would owe a duty to the equity. Yeah, absolutely. To equity. Which is what the estate is. I mean, there's a confusion here as between the relations. Part of this is that it is not a direct ownership. I mean, it's not a direct creditor relationship. It's equity. So there is both ways. It goes both ways, but it's not as clean. The receiver would owe equity a duty as the trustee would owe the creditors if it stepped in and actively started managing that entity. Right. But he would not owe any kind of duty to Mr. Altman's, to the other creditors in Mr. Altman's bankruptcy estate. Let me ask you a dumb question. DSF and Altman both filed close to the same time? Yes. DSF initially filed. Did they have the same lawyers? I'm sorry? Did they have the same lawyers? The same orders? Did they have the same lawyers? No. How come? I did not represent DSF. How come? Conflict of interest. Okay. Problem, I think. It's never clean. You know, it's. . . I don't have a great answer for this, but I just think it's a problem. But I think, you know, the fact that. . . But whether or not a trustee would owe a duty to DSF's creditors or whether there would be a conflict. I mean, there are certainly. . . As the Court mentioned, there are different ways to skin a cat. But doesn't that situation arise now? I mean, it exists now with the debtor in possession being a fiduciary to his creditors and having a management interest and a commitment fiduciary obligation to DSF. It's the same situation. So I guess I'm struggling with what the difference is if it's a trustee. Well, there is. . . The Court, while Ms. Shin had requested dismissal of the case, she never requested an appointment of a Chapter 11 trustee, either in Mr. Altman's bankruptcy case or in the DSF case. She has sought to dismiss it or convert it, as she said. To dismiss. I don't recall conversion. I may be incorrect, but certainly dismissal. But she filed a motion at the very beginning of the case, when the case was approximately two weeks old, and then more recently. And both times the Court found that there was not. . . And the reason why she filed a motion to dismiss was because, in her mind, this case had been dragging on. There's been a lot of litigation in this case, and the case had been dragging on, and a plan had not yet been. . . a Chapter 11 plan. Let me ask a question. If relief from stay is granted, and assume receiver is appointed, is there still reorganization in this case? I think it would be virtually impossible. I mean, the only way. . . The plan is based upon Mr. DSF either selling. . . DSF is in the business of property management, and it owns a valuable piece of property. And the plan is premised upon DSF either selling or developing that property. And then Mr. Altman would be entitled to significant distribution, which would be sufficient to pay creditors, if not in full, then a very large part of their claims. And if he's not driving the bus, that just makes it a whole lot less certain when any of that good stuff is going to happen, right? That's the point? If at all. Okay. I mean, based upon the litigation that's happened, what would happen? The way this would play out. . . Well, first of all, I have no idea what a receiver would do. You know, there is litigation between DSF and Ms. Shin. And now Ms. Shin obviously believes that that litigation is baseless. Ms. Altman and DSF both disagree. But Ms. Shin, one of the things that I think that's driving her, her goal to have a receiver appointed is that she would try to convince the receiver to dismiss the state court case. And then also, her goal from I think day one has been to wrestle control of DSF from Mr. Altman. Just like if there was a trustee appointed, I believe that she would certainly make an offer to purchase the estate's interest in DSF and probably would be able to do it. Ms. Altman would not be able to compete financially with that. So the plan, any Chapter 11 reorganization is if a receiver were appointed, I believe that's the end of it. And that was very much the focus of what I think the bankruptcy court was worried about. So let me move it back to maybe what might be a little different ground and ask you the same question I asked Ms. March. I mean, obviously, Judge Spraker and I have voiced some concerns today about some questions that didn't get asked, but we weren't the trial court. So what's the standard? It's abusive discretion, right, with respect to relief from stay? Okay, so I guess the question is what's the difference between looking at this from an abusive discretion standpoint and wondering why other questions didn't get asked? I mean, I'm not supposed to – our role as appellate judges is to apply the appropriate standard of review, not say, well, I would have done X. Right. So we're worried about some conflict issues, but walk me through abusive discretion, why that standard's not met here. Well, the court did a very thorough analysis of applying the Curtis factors to whether relief from stay should be granted in this particular case. And overwhelmingly, in applying the factors one by one, it found that the vast majority of those factors weighed in favor of denying relief from stay. There are only a very few of the factors that weighed in favor of DSM. For instance, the first factor is that – well, the fact that this is – that DSM continues to throw distribution, sufficient distribution, to allow Mr. Altman to basically continue in Chapter 11 and to hopefully fund the plan. If the receiver is appointed, that would significantly affect the administration of the bankruptcy state and impair Mr. Altman's ability to reorganize. This would not – any action to oust Mr. Altman as DSM's manager would not primarily involve third parties. It involves Mr. Altman as the debtor, Ms. Shin, who is his largest creditor, and DSF, the principal – the bankruptcy's principal asset. And while there are – Mr. Altman has creditors that are not related to DSF or this dispute at all, relief from stay to allow the appointment of a receiver could prejudice the interest of other creditors. So that also weighs against relief from stay. The appointment of a trustee to usurp control from Mr. Altman is unnecessary because there's a host of other less draconian measures, as we've discussed, appointment of a Chapter 11 trustee. You know, as I said, DSF was in its own Chapter 11 bankruptcy case. Ms. Shin could have moved for appointment of a Chapter 11 trustee in that case. Never happened. Never attempted. Could have asked for appointment of a trustee in this case. She has so far not done so. Thank you, Counselor. Your time is up. Thank you. You have one minute and 45 seconds. I'll talk quickly, Your Honor. So the assets of the LLC are not property of the estate. The contractual right of the debtor to manage that estate is the property interest and property of the estate. Why is that wrong? Well, it's correct that the assets of DSF, a non-debtor entity, are not property of Altman's estate. The property of Altman's estate is his 75% equity in DSF, which he will still own even if the receiver were ordered appointed by the superior court. But under the broad, expansive definition of property of the estate, it includes all contractual rights of the debtor, and a contractual right of the debtor in this case is the right to manage the LLC, which you need relief from stay in order to change. Let's assume that's true. Pintler, the Ninth Circuit case, said, we hold the persuasive effect of a judgment involving third parties does not have sufficient potential impact on the value of the estate, that's the bankruptcy estate, to fall under the Bankruptcy Code stay provision. So let's assume it's property of the estate. That doesn't mean it stayed. And as Judge Lafferty pointed out, bankruptcy is not supposed to change the rights of a non-debtor SHIN to move for a receiver under California state law for a non-debtor DSF. And I want to address one question that Mr. Bethama I don't think answered correctly. Altman can still do a Chapter 11 plan if a receiver is appointed. He can sell his 75% interest in DSF, put that money into the plan, and then put in five years of surplus income minimum. That's actually what he has to do under the Ninth Circuit Zachary decision. So it's not going to change anything that he has to do. He would have to, the 75% equity interest is a pre-petition not exempted property interest, and he would need to sell it and put that money into the plan and he can still do that. Your time is up. You may sum up shortly, quickly. This should be over under 362E2. Ms. SHIN agreed to the continuance to 912. She objected in writing when the bankruptcy court, vacated its denial on 912 and set a briefing schedule and a hearing on 1128. Her first pleading filed after that. She objected in writing that that was going beyond the 60 days. And there is no case that says that because she agreed to continuance the first time, she can't object the second time, and she did object in writing, and that is at the excerpt of record. And let me find you the page. Thank you very much. Your time is up. Thank you, Your Honor. Thank you.
judges: Kurtz, Lafferty, Spraker